PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA 92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE CANTU, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ADORAMA INC., a New York Corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.   2:23-cv-2907<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE VIDEO PROTECTION PRIVACY ACT** |

# I. INTRODUCTION

1. Whenever someone watches a video on www.adorama.com (the "Website"), Defendant secretly report all the details to Google and Meta, Inc (and its subsidiary Facebook): the visitor's personally identifiable information ("PII"), the titles watched, and more. Why? Data harvesting and targeted advertising.

2. As shown below, Defendant's actions violate the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"). As such, Defendant is liable to each class member for $2,500 and related relief.

# II. JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the VPPA, a federal law.

4. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the acts and events giving rise to the class claims occurred in this District. Plaintiff and many Class members reside in this District.

5. Defendant is subject to personal jurisdiction because the exercise of jurisdiction over Defendant comports with due process because Defendant has requisite "minimum contacts" with the state of California, such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. Indeed, Plaintiff believes that Defendant generates a minimum of eight percent of its national website sales to Californians, such that the website "is the equivalent of a physical store in California." Since this case arises out of Defendant's operation of its website directed toward California residents, this Court can "properly exercise personal jurisdiction" over the Defendant. *See Thurston v. Fairfield Collectibles of Georgia*, 53 Cal.App.5th 1231 (2020).

# III. PARTIES

6. Plaintiff is a resident and citizen of California who resides in this Judicial District. Plaintiff is also a consumer advocate who played and watched a video entitled "Adorama Drone Demo Days | UAS Training for Agencies & Organizations" in early 2023 on Defendant's website at the link https://www.adorama.com/g/EnterpriseDrones.

7. Defendant is a for-profit corporation with its principal place of business in New York, New York. Defendant owns, operates, and/or controls a variety of websites and offers multiple videos for consumers to view and play. Defendant owns, operates, and/or controls a variety of websites and offers multiple videos for consumers to view and play.

### IV. FACTUAL ALLEGATIONS

**A.   GOOGLE ANALYTICS**

8. Google Analytics is part of the Google Marketing Platform and is available for free to anyone with a Google account. There are two commonly used versions of Google Analytics: Google Analytics 3 (Universal Analytics) and Google Analytics 4 (GA4). Universal Analytics is the legacy version of Google Analytics and is slowly being phased out.[1] GA4 is the latest version of Google Analytics that was launched in 2020.[2] The tools are materially similar in how they collect and transmit website analytics data to Google.[3]

9. Google Analytics acquires user data from each website visitor using one or more tracking tags installed on the website. A tracking tag is a small piece of JavaScript code that the website owner inserts into the existing code of each page. The Google Analytics tracking tags run in the web browser of each visitor, collecting data and sending it to Google's data collection points.

10. Website owners control what data the Google Analytics tracking tag will collect, including the website's metadata, along with what pages a visitor views.

11. Website owners control how the Google Analytics tracking tag identifies visitors. The Google Analytics tracking tag is configured to collect "HTTP Headers" and

---

[1] ABOUT UNIVERSAL ANALYTICS, https://support.google.com/analytics/answer/2790010?hl=en (last visited April 2023)
[2] [GA4] INTRODUCING THE NEXT GENERATION OF ANALYTICS, GOOGLE ANALYTICS 4, https://support.google.com/analytics/answer/10089681?hl=en (last visited April 2023)
[3] UNIVERSAL ANALYTICS VERSUS GOOGLE ANALYTICS 4 DATA, https://support.google.com/analytics/answer/9964640?hl=en&ref_topic=12153646,12153943,2986333,&visit_id=638115536489543614-1150820823&rd=1#zippy=%2Cin-this-article (last visited April 2023)

"Event Parameter" data. HTTP headers include data such as IP Address, User Agent String, and Language. HTTP headers are sent to Google from the web browser with every Google Analytics event that is tracked. Event Parameters vary based on the type of event and may include data such as web form interactions, video views, file downloads, page scrolls, web searches, etc.[4]

12.  Google Analytics can generate customizable reports to track and visualize data such as the number of users, bounce rates, average session durations, sessions by channel, page views, conversions (such as purchases and adding products to carts), and more. Google Analytics is "designed to work together" with other Google Marketing Platform products to help measure, understand and enhance a website's digital marketing.[5] For example, website owners can easily export data from Google Analytics to Google Marketing products to generate audience segments to facilitate targeted advertising.

**B.   WWW.ADORAMA.COM AND GOOGLE ANALYTICS**

13.  Plaintiff uses a Google browser and watched a video on the website. Defendants disclosed information that allows Google (and any ordinary person) to readily identify Plaintiff's video-watching behavior, as shown by the below examplar of the information Defendant transmits to Google when someone watches a video on the website:

---

[4] [GA4] ENHANCED EVENT MEASUREMENT, https://support.google.com/analytics/answer/9216061 (last visited April 2023)
[5] GOOGLE MARKETING PLATFORM, ABOUT GOOGLE ANALYTICS, https://marketingplatform.google.com/about/analytics/ (last visited April 2023)

**Figure 1**



14. Defendant displays self-hosted video content on their website. The sole video on this page is configured to play automatically upon visiting the website page.

**Figure 2**



**Figure 3**



15. Defendant has configured the PageView event to transmit the page URL, page title, video title, and _gid cookie to Google.

16. The _gid cookie submitted is a unique personal identification number for Google accounts. This data is stored and readily accessible by the Defendant's Website.

**Figure 4**



17. The _gid cookie stored from the website on the browser matches the _gid submitted to google.

18. Defendant's actions readily permit an ordinary person to identify Plaintiff's video-watching behavior.

## C. EXPERIENCE OF PLAINTIFF

19. Plaintiff has subscribed to one of Defendant's newsletters in the last. As such, Plaintiff is a "subscriber" and therefore a "consumer" under the VPPA.

20. Further, Plaintiff is a consumer privacy advocate with dual motivations for playing videos on Defendant' Website. First, Plaintiff was genuinely interested in learning more about the goods and services offered by Defendant. Second, Plaintiff is a "tester" who works to ensure that companies abide by the privacy obligations imposed by federal law. As a consumer who advances important public interests at the risk of vile personal attacks, Plaintiff should be "praised rather than vilified." *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 954 (7th Cir. 2006).

21. In enacting the VPAA, Congress intentionally chose to extend its protections to all persons who watch videos, not simply those who purchase them or claim pecuniary loss. As such, statutes like the VPPA are largely enforced by civic-minded "testers" such as Plaintiffs. *See Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109 (9th Cir. 2014) (explaining why testers have Article III standing and generally discussing value and importance of testers in enforcement of consumer protection and civil rights statutes).

22. When Plaintiff played the video on the Website, Defendant knowingly disclosed event data, which recorded and disclosed the videos' title, description, and URL. Alongside this event data, Defendant also disclosed identifiers and PII for Plaintiff, including the c_user, fr cookies and _gid. In other words, Defendant did exactly what the VPPA prohibits: it disclosed Plaintiff's video viewing habits to a third party.

23. **In summary, based upon the preceding information transmitted by Defendant to Google, Defendant enabled *any* individual who possesses basic reading skills to identify the title of videos viewed by any class member, because the title of every video watched is transmitted by Defendant to Google.**

24. Defendant's conduct is illegal, offensive, and contrary to visitor expectations.

## V. CLASS ALLEGATIONS

25. Plaintiff brings this action individually and on behalf of all others similarly situated (the "Class") defined as follows:

> **All persons in the United States who played video content on any website owned, operated, or controlled by Defendant and whose PII was disclosed by Defendant to any third party during the two years preceding the filing of this action (the "Class Period").**

26. **Numerosity (Fed. R. Civ. P. 23(a)(1)):** At this time, Plaintiffs do not know the exact number of members of the aforementioned Class. However, given the popularity of Defendant's website and the prevalence of Defendant's products throughout the United States, the number of persons within the Class is believed to be so numerous that joinder of all members is impractical.

27. **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2), 23(b)(3)):** There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual members of the Class include:

a) whether Plaintiff and the Class are within the definition of the term, "consumers," used in the VPPA;

b) whether Defendant collected Plaintiff's and the Class's PII;

c) whether Defendant unlawfully disclosed and continues to disclose users' PII in violation of the VPPA;

d) whether Defendant's disclosures were committed knowingly; and

e) whether Defendant disclosed Plaintiff's and the Class's PII without consent.

28. **Typicality (Fed. R. Civ. P. 23(a)(3)):** Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, watched a video on a website

owned, operated, or controlled by Defendant and had PII collected and disclosed by Defendant.

29. **Adequacy (Fed. R. Civ. P. 23(a)(4)):** Plaintiff has retained qualified and competent counsel who are highly experienced in complex consumer class action litigation. Moreover, Plaintiff will fairly and adequately represent and protect the interests of the Class.

30. **Superiority (Fed. R. Civ. P. 23(b)(3)):** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable. Even if every member of the Class could afford to pursue individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Class. Plaintiffs anticipate no difficulty in the management of this action as a class action.

## VI. CAUSE OF ACTION
## VIOLATION OF THE VIDEO PRIVACY PROTECTION ACT
## 18 U.S.C.§ 2710, *et seq.*

31. Defendant is a "video tape service provider" that creates, hosts, and delivers videos on its websites, thereby "engag[ing] in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4) (emphasis added). Defendant also uses the videos to collect and disclose viewers' PII so it can later retarget them for advertisements.

32. Plaintiff and members of the Class are "consumers" as set forth above. They have also watched videos on a website owned, operated, or controlled by Defendant. 18 U.S.C. § 2710(a)(1) (emphasis added).

33. Defendant disclosed to Google Plaintiff's and the Class members' personally identifiable information, including identifying information and the title of the videos viewed.

34. Plaintiff and the Class members played videos offered by Defendant.

35. Defendant knowingly disclosed Plaintiff's and Class members' PII because Defendant used that data to build audiences on Google and retarget them for its advertising campaigns.

36. Plaintiff and Class members did not provide Defendant with any form of consent—either written or otherwise—to disclose their PII to third parties.

37. Defendant's disclosures were not made in the "ordinary course of business" as the term is defined by the VPPA because they were not necessary for "debt collection activities, order fulfillment, request processing, [or] transfer of ownership." 18 U.S.C. § 2710(a)(2).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seek judgment against Defendant, individually and on behalf of all others similarly situated, as follows:

    a. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as representative of the Class;

    b. For an order declaring that Defendant's conduct violates the VPPA;

    c. For an order finding in favor of Plaintiff and the Class on the cause of action asserted herein, including all available damages;

    d. For prejudgment interest on all amounts awarded;

    e. For injunctive relief to stop the illegal conduct;

    f. For an order awarding Plaintiff and the Class reasonable attorneys' fees, expenses and costs of suit;

g. For any and all other relief, at law or equity, that may be appropriate.

Dated: April 18, 2023         PACIFIC TRIAL ATTORNEYS, APC

By: _____
Scott. J. Ferrell
Attorneys for Plaintiff